at all. Argument not to exceed 15 minutes per side. Mr. Adams, you may proceed for the appellants. Good afternoon. Good afternoon, Your Honor. Are we here or are we there? You are there. Thank you. May it please the court. Counsel. This case should be remanded to the trial court for four different reasons. First of all, the district court erred in excluding John Phillips' spoken statements to Steve Sargent that Vijay Yadav had a hidden agenda to remove American employees and replace them with Indians. Also, the second piece of information is the written Facebook messenger statements to Stella Dulaney after John left the HR and sent it through a Facebook messenger that confirmed the exact same thing. Number two, plaintiffs have claimed and supported their case for both hostile work environment through disparate treatment and discrimination on the basis of national origin and their respective terminations despite the court's credibility assessment that Steve Sargent's testimony was unsupported and speculative. Number three, plaintiffs have provided evidence of pretext to rebut the presumption of non-discriminatory termination. And number four, disputed material issues exist to support Dulaney's retaliation claim under KRS 344-280. First issue I'm going to take up. I'm going to ask you, under retaliation, are you then conceding the Fowler's, you're not making arguments with respect to Fowler's retaliation claim? We are not. He did not make any protective reporter activity beforehand, so that's not before the court today. So your first two arguments really go to the race discrimination theory generally, and there's been some commenting in the brief that you may have pled one theory in your complaint and then briefed another theory on summary judgment? That was the memorandum, that was the opinion of the court. And if you think about it, 344.040 is the discrimination statute in which we brought this case under. And discrimination can take two different paths. The discrimination can be based on harassment, which is also known as hostile environment. It would have been preferable, I did not draft the complaint if those terms were in there. However, we alleged discrimination, harassment, retaliation, disparate treatment, wrongful termination. And if you think about harassment... But you did not allege hostile work environment? We did not allege those specific terms, but it's... So how are they on notice that they're defending a hostile work environment claim? How does that complaint, and you have to put them on notice, I mean... Absolutely. How are they on notice of it? If you look at the complaint itself, paragraph six, defendants are jointly and severally responsible for harassment and termination based on the American Indian, or American nationals versus Indians and women and men. We basically alleged that there were disparate treatment and the terms and to prove a hostile environment claim as there was unwelcome harassment. Harassment, that term is specifically used in the complaint. Protected class, that's specifically in the complaint. That goes to both? It does go to both. Yeah, and hostile work environment is such a term of art. I mean, it's just a term... People on the street don't know it, but all lawyers know what it means. So it's a pretty common thing, you think, to put in the complaint if that's the kind of claim you're bringing. As opposed to a general discrimination claim, didn't get to go back, I would put it in there. I didn't draft the complaint, but my name is on it, and so I have to follow that. Was there, in response to the motion for summary judgment, was there a motion to amend the complaint to add it to conform to the evidence? There was not. Don't you think that should have been done? In hindsight, that would have been an appropriate course. I mean, that might have been an abuse of discretion not to grant it. If discovery had actually shown another theory that wasn't in the complaint, if there's not prejudice or whatever, but we're not there, I guess. Yes. Instead, we chose to say that it's not fatal to not have that heading in the complaint. Sure. If it's just lack of a heading, I kind of agree with you, that that's more form over substance. But if the substance of the complaint is alleged and there's facts in there, but it's really kind of a notice pleading standard, and I think I understand your argument. Okay. Would you like for me to point out the other areas of the complaint where I believe it is on notice, or do you want to move on to your argument? So, the two major pieces of evidence that were excluded, and they were done so under a 2002 case, Wilson v. Dana Corporation. Obviously, 2010, Federal Rule 56C was amended, and it added a broader range of information that can be used at the summary judgment stage. It mentions documents, electronically stored information, declarations, and quote other actually two from the fifth, that indicate basically as long as the information could be reduced to admissible evidence at trial, it should be considered at the summary judgment stage. So, in looking at those two pieces of evidence, first the Facebook Messenger, Federal Rule of Evidence 801 D1 A or B could be used. We would call John Phillips to the stand, and this was argued in front of the trial court, and if he chose to agree with its contents, then it would come in as consistent testimony. Okay, I'm sorry. You have something that, I want to make sure I understand this, you have something that Sergeant And he sent something to Delaney, is that right? That is correct. Okay. What facts did it assert? It asserted the contention that they had an agenda to Who had that agenda? Vijay Yadav, who was a business head. And if you think about John Phillips being the manager of HR, he was the person that was in the cockpit of this company to see what employees were coming, where they were going, who was being fired, who they were being replaced with. So, it's basically, it's a conclusion supported by what? What facts would he have testified to at trial? Well, it would be his observations. His observations of who was being terminated and the individuals that they were being replaced by. So, you're saying that he would testify that there were a series of terminations and backfilling with Indian nationals? I don't know that he would go that far because we only have that messenger and we only know about what he said while he was still employed to Steve Sargent that Steve Sargent then told us. And that was about this agenda, that Americans were being replaced, there were five people on a hit list, two of the five are the two of the plaintiffs here. The other, another one of the persons was another plaintiff that we settled with. This all goes to your discrimination, not retaliation, correct? Correct. And on your discrimination claim, this is not a case where you didn't file a response to summary judgment, right? You filed a response. It's just you only couched your argument in terms of hostile work environment, right? That's not correct. If you look at the response, there are two separate entire areas talking about the pretextual reason for the wrongful termination. And if you look, once again, that was the heading. But if you look in that heading, all of the elements are argued. I was just distinguishing this between a case where a party doesn't file any response to summary judgment and in the district court, what does it do? And maybe we have some cases that say in that circumstance, because there's no response from your side, the district court somehow has to go through all the factors. But this is not that case. This is a case where you did respond. We responded. The factors are in there. Maybe they're not in the best heading. The defendants were on notice because the defendants actually replied on those same areas. In that circumstance, the district court thinks you've sort of argued an issue you didn't plead. Does the district court still have an obligation to then go through all the elements? Or can it just say you've abandoned that argument? Because you did respond. It's not a case where you didn't respond. You did respond. You just didn't hit on the argument that the district court thinks you pursued in your complaint. So in that circumstance, the district court doesn't have to go through all the elements, does it? I think it should. I don't have a case law to tell you directly. But, I mean, the facts are in there. The elements are in there. They replied, and his opinion just stopped short and said that it wasn't argued. It was abandoned. If you look back through it, actually, I mean, it was. There were separate sections talking about the terminations and how their terminations were pretextual. Do you want to talk about it? Hold on. In there, I guess. I was just going to. I don't know if Judge White has a question about it. You might want to spend some time on retaliation, or do you want to stay with this? I just want to let you know, if you look at that response, page 16 and 22, where all the discussions about the termination and the pretextual reasons for the termination, where we had direct evidence of the discriminatory animus. As far as retaliation goes. Did you argue that it was a direct evidence case? It was argued that both there was a hostile environment and the discrete discriminatory action theory of discrimination. Direct evidence, the judge really didn't get into it because he excluded that information, and that was the first, I guess, paragraph of his argument. He really didn't get into the fact that John Phillips, his HR manager, recognized, discussed, and then told other people that there was a hidden agenda, that there was discrimination against Americans, and they were being replaced by Indians. Why couldn't you just get an affidavit from him? Mr. Phillips is retired military, as a lot of people in that area of Kentucky are, and I contacted him, and he was very adamant that he did not want to be involved. Can't subpoena him for deposition? We could have. I could have done that. Why didn't you? Because I had the statement, and when I took the statement. The statement is really blatant hearsay. We don't know if it's true or not, and the amendment to the rules say that if it can be put in a form, that's admissible in trial. But to have it in a form, you have to assume that it's true. And here, we don't know if the statement is even true or not. So I think you have a problem. Before your time is all the way up, though, how do you respond? Delaney was not replaced by an Indian. Her job was basically eliminated by restructuring. So how do you establish a prima facie case when she's not replaced by somebody out of her class, that her job is gone? Thank you, Judge Griffin. If you look to the case of Brooks v. Lexington-Fayette Urban County Housing Authority at 132 Southwest 3rd, 790, at 797, it talks about the elements under the Discriminatory Action Theory. Subsection 4, we only have to prove that she was treated less favorably than similarly situated employees outside the protected class or that she was replaced by someone outside of the protected class. And so we proved that first area, that she was treated less favorably than similarly situated employees outside the protected class, and there was evidence from Sargent directly on that issue. What, that other positions were not restructured to be eliminated? I mean, is your theory that they went through this elaborate restructuring just so they could terminate her? Yes, because we have evidence that before all of that took place, before Deepak Mehta was even hired, that there was an agenda in place that were targeting these five individuals. I mean, if you look at the reasons that they gave for replacing her, they were trying to make it look like a position elimination, but they're saying we weren't getting enough value from her, we need to get somebody that has a higher level of education. It was all directed toward her, not we just eliminated the position. And Steve Sargent said she was an excellent employee, she was trainable, and they were educating her at the time, and they hired her with the qualifications that she walked in as. All right, you've got three minutes for bubbling. I just want to ask a question. I'm sorry. So what do you do? Now you're saying that you couldn't get the witness, basically, and you weren't prepared to subpoena him. So what do you do with that? I mean, is the defendant just supposed to wait for trial and then you don't present the witness? So what I did with that statement, if you look in Steve Sargent's deposition, I asked Steve Sargent every single issue or question through that statement. Steve Sargent corroborated those statements, and he actually said that Phillips and Sargent had conversations and that Phillips actually told him those same things during a period of time that he was employed, which is an exception to hearsay. I'm sorry. Why is it an exception to hearsay? Because he was an employee at the time that he made it, and it was in the course and scope of his employment under 801D2D. But that is, I don't think that it's admissible just because he says to somebody he works with that, gee, they have an agenda to get rid of all the Americans. It's my understanding of the rules of evidence that if somebody makes a comment within the course and scope of their employment, that that is an exception to hearsay. No, it is under the right circumstances. So you're relying on Sargent to say this is what I was told by Phillips. That is the other way that we relied on that information, yes. Okay, then what's the first way? I'm sorry. The first way was through the Facebook messenger that we presented. Okay. And we told the court this can be reduced to admissible evidence. We will call Phillips if we have a trial. We will ask him about this. If he agrees with it, then it comes under the Section B, which is consistent, 801D1A or B. And if he testifies inconsistent, then we'll use that statement to do the cross-examination process to But you just said the chances are you're not going to be able to get him. Not for a deposition. We chose not to do it for a deposition. We always knew if we were going to trial, we would have to. Okay, well, then I'm asking you again. Does that mean that you just wait? You just wait to trial and see if you can get this person to come? Well, I would assume he would respond to a subpoena by the court. There's a different set of pressure, I guess, for a person to come in and testify truthfully if they're sitting in a courtroom with a judge there, with everybody else. When you are sitting there asking someone, will you come in and give me a deposition, and they're being a little bit squirrely, and they say, I think you can get a court order to compel somebody to take a deposition. Absolutely. But I just didn't know what he was going to say in that process because he was so adamant about not wanting to be in the room. So you may have a trial, even though it may be a case where there shouldn't be a trial, because of the possibility that you may get somebody to testify. I mean, it's speculative, and that's not usually what we allow. Any further questions? I actually just had one. I don't think you talked about the retaliation claim, Delaney's retaliation claim. Yes. I think your friend on the other side is going to say that whatever protected conduct was engaged in, the senior parties, the senior officials of the company didn't know about it, and it would only have been by inference or speculation that they would have known about it, so their actions can't be considered retaliatory. What's your best response to that? Well, what is that, the cat's paw theory? I mean, we have a cat's paw theory. We usually ask the questions, so how much of that do you? No, no, no. You're asking me to think on my feet. I have not done this in a while. I'm a little rusty. That's okay. We haven't been here for a while either, so we're equal. So, you know, if you look at the statements that Stella Delaney made or the complaints that she made, the reports, in the December 2016 timeframe, right, she reported to Sargent, and you had Sargent reporting these things to Phillips. And Sargent, who was still employed at the time I took his deposition, I understand that he is now, he is a little bit squirrely, but he said, I ask him specifically, did she make complaints about women and national origin issues? And then he said probably on page 69 of his deposition. Then he turned around on 73 or 74 and said he believed that she was concerned about hostile work environment. So then you've got Delaney reporting to Phillips, HR manager, that she was being targeted right at the same time. And he not only confirmed that, he said you are being targeted because he knew about the agenda and the five people on the list that she was on. And he told her in that meeting, his response was, you need to go home over the holidays and think about where you want to work because your time is near. Now, the reason that Phillips told the other two, or that it's just an afterthought to Phillips? The knowledge is to the organization. We've got people that are supervisors and managers, and so the organization knows. And if we had to brief the Kaspar theory, which we haven't in this case, obviously the inference is once the organization knows, they can't hide behind another person somewhere else and say, well, you reported to him and I didn't know about it. Didn't she repeatedly testify that she didn't remember if she told them that what she was complaining about was race, not race, nationality and gender and sex? If you look at her testimony, she admitted that she was not using those terms. She is a non-lawyer. She was explaining the conditions of which she found herself. She was explaining essentially what this environment was doing to her, how she felt she was being targeted. I don't think she used those terms. However, Phillips, hold on a second. I noticed that there's somewhere in the testimony that that discussion was made and that one of them acknowledged, no, you are being targeted because you're a woman and you're American. For retaliation, she has to make a complaint, does she not? And didn't she admit she did not complain? Well, it's a good faith report. I know. Did she make a good faith report? We're saying that she did by having these conversations with people in the HR department and Steve Sargent, who was the general manager of research and development. She didn't make a formal complaint. By having conversations, okay. And because she had conversations, then she could be retaliated for those conversations. I mean, normally in a retaliation setting, we have somebody that does file a complaint or informal complaint or whatever, and then they're retaliated for taking that action. And that's, this is not supported as much as the types of retaliation we normally see, that's all. And I don't believe the case law requires that type of. Okay. She reported to HR, right? Yes. Okay. All right, any further questions at this time? You'll have your three minutes rebuttal, Mr. Adams. Thank you. All right, let's hear from FLE. Good afternoon, Your Honors. My name is Greg Sigenthaler. I'm here for, actually there's the three defendants in the case, Mr. Choudhury and also Mr. Yadav are also individual defendants. With respect to the retaliation claim, the Burrough case that we cited indicates that reporting or having a conversation regarding some of these issues with a non-decision maker doesn't necessarily mean that that information is imported or gets to the decision makers. And the decision makers with respect to Delaney's termination were three people, Meta, who was her new supervisor as of January 2017, Mr. Yadav, who was the business head, and Mr. Choudhury. There's no evidence in the record that shows that any of these alleged conversations that are generally alluded to with Phillips or Sargent ever got to them. And the Burroughs case says it's simply not enough to, just because you may have had that, that it automatically got to you. Phillips is in HR, right? He is in HR. Sargent's not. Sargent is not. Burroughs is about a conversation with an HR representative or somebody else? It is somebody else. It's not somebody in HR. But on the point with respect to the HR, there was never a complaint. If you look specifically at her testimony, I took her deposition, she never imparted, and there's no evidence of any communications between Delaney and Phillips regarding any allegations of discrimination, harassment based on anything, sex, nationality, or race. Okay? And her testimony is specifically addressed there in December 2016. She met with Phillips, and she says she could not recall specifically if she raised that with him. So there's no protected activity, but there's also nothing from that conversation upon which Phillips would glean there's a particular issue or a complaint that he could have possibly passed on to the decision makers. We also have testimony from Chattervedi who said that Phillips never spoke to him about any allegations of Delaney's complaints. We also have on that issue, because I went through this, December 2016, you talked with Phillips. Do you recall anything about talking about race, sex, national origin? No. Same conversation with Metta in January 2017. Went over her job review and all that and her qualifications, which was part of this process with the upgrading. She didn't have the qualifications, but she didn't raise anything. She didn't even complain about Yadov in that communication. She goes to Salmon, who is a member of Human Resources. She says she didn't recall bringing up race, sex, or national origin in that. And she said that Ms. Peggy told her to go talk to Chattervedi. So on February 2nd, she talks with Chattervedi, and I asked her all kinds of questions about this. And it's clear she never raised anything regarding sex, race, or national origin. I asked her all these times, so she never brought that up. So there's nothing in the – the district court was correct to find that there was no – or reasonably had information imparted to them about her alleged conversations with Sargent, even if you want to assume those are considered protected activity. And that's where summary judgment should be affirmed on that. What do you do with – there's plenty of anecdotal evidence that the leaders were – especially Yad, I think, were making comments about the American workers being lazy, saying things like, well, you know, you better get better, or I'm going to get rid of all of you and hire Indians, and making comments that they're stupid and lazy, et cetera. I mean, there appears to be anti-American animus in the top people. None of those were attributed to one to Chattervedi, other than the one comment about where he's speaking to a group of management, which includes Americans and Indians in the group, where in September it's allegedly said, worse to the effect, that if you guys can't get this plan in line, we're going to get rid of all of you all and replace you with Indians. Now, Fowler testified to that. Chattervedi denied it. I know that's a material issue of fact. Sargent said he heard the comments, but not the last part about replacing with Indians. It was also – the context of this was a situation where Fowler admitted the plant was poorly performing and sales were down, and he's also said Chattervedi never said anything like that again. Okay, but this is all factual dispute. Well, in terms of the harassment claim, we don't believe that's in the complaint, but that one comment isn't enough to show that the decision to terminate Fowler was motivated by national origin bias. I mean, Fowler even said that four months after this alleged comment, Chattervedi removed him from the Bemis and Covarris accounts because Fowler had made unauthorized rebate changes. Let's not talk about Fowler. Let's talk about Delaney. Okay, talk about Delaney. So in terms of Delaney, in terms of that, the background chatter is – again, none of this applies to Chattervedi, the ultimate person in charge of that. There are some comments out there that are alleged that Sargent said. Delaney testified she never heard about any of these comments, for one. She testified that she, in her conversations with Yadav, that Yadav never said anything derogatory to her or about her or about women or Caucasians or Americans. And she also – you know, so she also said that Yadav's communications with her on these email back and forth on the Dunmore report that came up in December 2016 were constructive and that she had to go back and do the report. But you're spinning now. I mean, right now you're spinning the facts and giving me your best shot. But that's not what we do on summary judgment. So I'd like you to really – Again, on the pretext issue that we have this – the communications that came from Dr. Sargent in June of 2016, he's the one that's in charge of research and development. He says, we're going to restructure the department. In here, you'll see that the qualifications for the position for field service manager are six to eight years science degree or equivalent. Delaney didn't have that. He said, we need to hire somebody to take over the technical service department, and we don't have the resources. They went out and hired Metta, Deepak Metta. He's got a couple, at least two, maybe three science degrees. He's now in charge of the technical service department. Sargent goes over. He says, I'm going to do the research. You guys do the development. So the development side is where you actually go out into the field and do the tests to make sure that these products work. So this is a plan that was set in place by Sargent alone. So the upgrading was we bring in Metta with the degrees, but we also want to change the field service manager position, which technically should have a science degree because of the technical know-how and requirements for this job. They said, we're going to have a science degree. Metta talked with her. Obviously, she didn't have the degree, and they eliminated her position. So these comments that you might want to attribute to Yadav out there, which has nothing to do with this whole plan that came in place, and for that reason summary judgment should be granted because there's nothing to say that this whole plan was developed just to get rid of her. It wasn't. This was set forth by Sargent, who they rely on in most of their testimony. I don't know if that covers your particular question on that, but I hope that wasn't spending too much on that. But those are the facts, and also the case law that we cited supports that. In terms of the hearsay arguments, the district court judge did not err in ruling out the consideration of these two hearsay aspects. We have to look at this at the summary judgment stage. We can't wait until trial to figure out what Phillips may testify. We don't know what Phillips is going to say in this case. We objected. The defendants objected to these statements, the Facebook post, and the comments that Phillips said that Yadav, you know, Phillips said that, excuse me, Sargent said that Phillips told him that Yadav was out to get five people. Well, that's hearsay. We objected to it on hearsay. The court, there were no hearsay objections. There was no mention of any of these exceptions to hearsay ever raised at the trial court. The judge, Hale, even held a special oral argument, which is unusual, you know, in federal court to specifically address the hearsay argument. That was a large part of that. The transcript's been forwarded up. There were no objections or exceptions to hearsay raised in that by the other side. They related it to the Facebook post, to a police report, and the judge dealt with that as not being, you know, an appropriate exception. The problem with this case is that even, you know, the relaxed, you know, change in the law with the relaxation of sworn or unsworn or attested to documents, that one doesn't have anything to do with Sargent's testimony, but it does apply to this case because there's the plaintiffs or the appellants cannot make good on their representation that Phillips is going to show up at trial and testify that V.J. Yadav has a hindered agenda. Okay? Didn't take his deposition. They could have. They could have subpoenaed him. The statement that we're looking at is not an unsworn affidavit where they just forgot to do it or he's writing something in, I'm going to testify to this so you know about that. It's not like an expert report where even though it's not attested to, you would expect the expert to testify to that at trial. There's simply none of that which is required for the court to even possibly consider hearsay. And, again, these documents are replete with hearsay because it's Sargent saying what Phillips said, what Yadav said. So there could be two aspects of hearsay. But the point is we objected to all of that. There were no exceptions to that. But you could have Phillips come in and testify that from this date to this date, there was a shedding of all of the American workers, and they were being replaced by Indian nationals or workers of Indian descent. There's no facts to the record to support anything of that notion at all. I mean, that's pure speculation in this case. There's numerous Americans that work at this facility. And, you know, if you look at Delaney, she wasn't replaced by, you know, her job was eliminated, but her job was done by Americans. Didn't the number of or the mix change pretty drastically over time? Not at all. There's no evidence to any mix changing whatsoever over time in this facility. I mean, we have even hired Fowler as their chief marketing officer in February of 2016. Caucasian, American national, you know, and so, you know, yeah, his job was eliminated, but his performance was dreadful. I mean, he even admitted his performance from him and his sales were unsatisfactory, certainly at the very end. He also admitted that he understood that he was removed from these two accounts because he did the unauthorized changes. I mean, those are legitimate reasons, as we've argued, for termination, but there is no evidence in this record of any sort of wholesale changing out of Americans for Indians. And so that was, again, that's pure speculation. It did not come up before the district court. It's not in these briefs before this court. So it would be just sheer speculation as to what Phillips might say. And I think the fact that he was uncooperative suggests that he's not going to testify in this way at court. We also have sergeant's hearsay testimony about what Phillips said, and I think it's important that we look at that when you are making your decision at 1482 and 1483, because he's not saying that you all told me I'm getting rid of these people because they're Americans or I've got an ax to grind to get rid of Americans. The questions were, and this is from my counsel here, it says to Mr. Phillips, and what, excuse me, to Mr. Sergeant, and what did John Phillips inform you? He said that VJ was out to get five people. Who were the five people? Stella, David, Andy, myself, and Joe Hearn. Are all of those five people American nationals? Yeah, as far as I know they are. Question, did John Phillips ever express to you that he formed the opinion that management at Flex was going to get rid of Americans in positions of management and replace them with Indian nationals? Answer, no. He never said anything like that. No. He asked him again a little bit later on page 1483. Do you recall John Phillips saying anything about Americans specifically being targeted and fired? No. I don't remember him saying that. So, again, we can't consider that. And that even cuts away from this belief that Phillips will testify that Yadav is out to get the Americans. We do have testimony that I think it was Yadav was harder on Delaney than other employees, correct? That he gave her a hard time. That's what she thought. She referred to it as nitpicking. There's no evidence in the case that Yadav was treating her differently than anybody else. And certainly there's no evidence in the record that he was treating her differently because of her race or gender. He was treating her in this regard because she wasn't doing her job to the standards. And we know that from the Dunn-Miller report in December 2016 where she goes out, does a field study test, returns the information, and he sends back an e-mail. He wasn't satisfied. But didn't Sargent testify that he was harder on her than anyone else and that he gave her a hard time? I'm not sure who he would know about in terms of that. I don't recall that. If you say it's in the record, I'll say it's in the record. But I don't recall if that's the situation. Sargent certainly didn't know about Yadav's interactions with anybody else at the facility. This is just over research development. Mr. Yadav was over other departments as well. And even Ms. Delaney testified that she didn't know or have any claim that Yadav treated her differently than anybody else with respect to these things. So in terms of management, they have to hold them to certain standards. And the standards, per Delaney's admissions, were that they were legitimate, they were constructive, and that she had to go back and get help from Sargent and others to revise the report, which she admitted made the report better. So that's another thing that even if we say that there's some comments here or here and there, it comes down to the legitimate, non-discriminatory reasons for the elimination of her job. She simply did not have the qualifications. She was replaced by American employees with chemistry degrees who did that work in addition to their own work. And this is a reduction in force. So that's all we have to establish for the Barnes case that we cited versus Gemcorp, I believe, is that in a reduction in force, this is not a replacement, and that's enough for a prima facie case. And I will point out that in the reply briefs and oral arguments by the plaintiffs in this case, they never addressed the prima facie case that Delaney was not replaced. It's not addressed at all in the briefing or the arguments. They did not address the prima facie case that Fowler was not qualified for his position, which he wasn't, or that he was replaced because he wasn't replaced by Sanjay Chowdhury. The two remaining salespeople, because we know on April 7th All right, Counselor, you're way out of time here. Any further questions? Judge White? Judge Radler? All right, thank you for your argument. Thank you, Your Honor. Mr. Adams, you've got three minutes to the bottom. Thank you, Your Honor. Steve Sargent testified that David Fowler was replaced by Sanjay Chowdhury. That is in his direct testimony. Steve Sargent testified, and I walked him around to different areas where people were terminated and were replaced. And we went through, and I I think Fowler was replaced. I don't think Delaney was. But Fowler, their argument was he was not qualified for the position, that he did not meet his sales quotas, that he fixed prices, and that he just wasn't qualified. And that's one of the elements that you have to establish, too. And how did you satisfy that? Well, the decision to terminate him occurred, we know from the evidence in the record, prior to those issues on the pricing things. We have direct testimony from David Fowler himself saying, the only reason that our sales numbers were down for that two-month snapshot was because my Indian counterparts were given better pricing, and I couldn't compete with that pricing. That's in the record. I don't think there's any doubt that he was qualified. I mean, he was in the position. He held the position. They didn't like, you know, towards the end, they made an issue that, you know, his numbers, which he actually self-set, where they said, oh, you didn't meet your quota. It was a self-set quota, and his response in his testimony was, I couldn't meet it over that two-month period, which is unfair. Unfair snapshot's not a year. It was because my Indian counterparts had better pricing. I couldn't compete with them. And that was his explanation. Was there any – I'm sorry. Does that go to the unauthorized pricing that he did? Well, that happened months before. I don't think that had anything to do with his termination. If that was as big of a deal as they made it, they would have terminated him right then. All right. Judge White. I've seen this claim that the Indian counterparts had better pricing. Is that anywhere in the record, the numbers, or is it just an assertion? That was just from David's testimony. That was just David Fowler's testimony. And so there's been no documents produced by either side to rebut that or to address that at all, and that's the material issue of disputed fact. Was it because there was an agenda to get rid of American nationals, or was it these other things and they should be decided by a jury in this case? But there was evidence through Steve Sargent's deposition in the various areas when I asked who all has been replaced, who's been terminated. I said, were they an American individual? Yes. Were they replaced by an Indian? And he would answer yes or no. And in our briefs, there's a couple different areas throughout the plant where that was the case. So there's no way that they can say that this was not being done. Anything further? All right. Thank you, Mr. Adams, for your arguments. The case will be submitted. With that, we will adjourn the court.